James C. Shah (SBN 260435)
*Attorney for Plaintiffs*
Email: jcshah@millershah.com
MILLER SHAH LLP
8730 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Telephone: (866) 540-5505

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW F. ROSS and SHELLEY B. ROSS, | CASE NO. |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | <u>JURY TRIAL DEMANDED</u> |
| NORADA CAPITAL MANAGEMENT LLC; NORADA FUND MANAGEMENT, LLC; MARCO SANTARELLI; NORADA EQUITY INC.; NORADA CAPITAL ECOMMERCE FUND I LLC; NORADA CAPITAL CRYPTO FUND I LLC; NORADA THEATRICAL PRODUCTIONS LLC; NORADA REAL ESTATE FUNDING LLC; NORADA CAPITAL REAL ESTATE FUND I, LLC; RONALD FOSSUM, JR; MICHAEL JOHNSON, | |
| Defendants. | |

COMPLAINT

COME NOW, plaintiffs, Matthew and Shelley Ross ("Plaintiffs" or the "Rosses"), by and through their attorneys, and for their Complaint state and allege as follows:

## I.    PRELIMINARY STATEMENT

This action arises from securities frauds and corporate misconduct perpetrated through a Ponzi scheme (the "Norada Enterprise").  The Enterprise gathered at least tens of millions of dollars from deceived investors by way of the illegal placement, sale, and solicitation of debt securities of Defendant, Norada Capital Management LLC ("Norada Capital").  Plaintiffs are among those investors and seek damages from Defendants, Norada Capital; Norada Fund Management, LLC; Marco Santarelli; Norada Equity Inc.; Norada Capital Ecommerce Fund I LLC; Norada Capital Crypto Fund I LLC; Norada Theatrical Productions LLC; Norada Real Estate Funding LLC; Norada Capital Real Estate Fund I, LLC; Ronald Fossum, Jr. and Michael Johnson (collectively, "Defendants").

From at least July 2021 through at least June 2024, Norada Capital issued promissory notes (the "Notes") to prospective investors, including the Rosses, promising returns of 12% to 17% annually, and in some cases, additional "bonus" payments of 5%.  These profits were to have been derived from investments made by and through commonly managed companies under the umbrella of the Norada Defendants as further described below.  The Rosses were told that their money would be allocated into a supposedly diverse pool of profitable companies whose investment returns were touted to outperform the stock market and beat inflation.  In reliance on Defendants' fraudulent misrepresentations and omissions, Plaintiffs invested $250,000 in the Notes issued by Norada Capital.

While Norada Capital portrayed these investment holdings as promising and lucrative, in reality they were speculative companies subject to the financial whims of serial securities law violator Defendant, Marco Santarelli ("Santarelli").  Santarelli

COMPLAINT                                                                                           1

presented himself as a seasoned investor but, in reality, he had a history of bankruptcy and violations of state securities laws which he failed to disclose. Santarelli lured Plaintiffs, and many others, into a classic Ponzi scheme. To maintain the scheme, investments from new investors in the Notes were used to generate the monthly interest payments promised to other existing investors in the Notes. Santarelli spent whatever was left.

This action seeks to hold Defendants civilly liable for their active roles in the Norada Enterprise.

## II. THE PARTIES

1. Plaintiff, Matthew Ross, is a citizen of, and an individual residing in, Portland, Multnomah County, Oregon.

2. Plaintiff, Shelley Ross, is a citizen of, and an individual residing in, Portland, Multnomah County, Oregon.

3. Defendant, Norada Capital, is a Wyoming limited liability company with a principal office and mailing address of 30251 Golden Lantern, Suite E361, Laguna Niguel, CA 92677. Defendant, Santarelli, is listed as the registered agent for Norada Capital. Although Norada Capital purports to be an investment management company, upon information and belief, it is not registered with any regulatory body as such.

4. Defendant, Norada Equity Inc. ("Norada Equity"), is a Wyoming for-profit corporation, with a principal office and mailing address at 30251 Golden Lantern, Suite E361, Laguna Niguel, CA 92677. Norada Equity purports to be an investment management company. On information and belief, Norada Equity has a sole officer and director, Santarelli. Norada Equity was administratively dissolved by the state of Wyoming in July 2025. Santarelli is listed as the President/Director, Secretary and Treasurer of Norada Equity. Norada Equity maintains a registered agent c/o Republic Registered Agent LLC, 5830 East 2nd Street, Suite 7000, Casper, Wyoming 82609.

5.      Defendant, Norada Fund Management, LLC ("Norada Fund"), is a Texas limited liability company authorized to conduct business in California. Norada Fund shares the same Laguna Niguel, California mailing address as Defendants, Norada Capital, Norada Real Estate Funding, Norada Theatrical, and Norada Equity.  Defendant, Santarelli, is listed as the registered agent for Norada Fund.  Defendant, Norada Fund, is the manager of Norada Capital and has a sole Managing Member: Santarelli.

6.      Defendant, Norada Capital Ecommerce Fund I, LLC ("Norada Ecommerce"), is a limited liability company duly incorporated in Wyoming with a principal office located at 2232 Dell Range Blvd, Suite 200, Cheyenne, Wyoming 82009.  Norada Ecommerce purports to be an investment management company. On information and belief, Norada Ecommerce has a sole Managing Member, Santarelli.  Norada Ecommerce was dissolved by the state of Wyoming in March 2025.  Norada Ecommerce has filed one Form D with the Securities and Exchange Commission dated July 24, 2024.

7.      Defendant, Norada Capital Crypto Fund I, LLC ("Norada Crypto"), is a Wyoming limited liability company, with a principal office located at 2232 Dell Range Blvd, Suite 200, Cheyenne, Wyoming 82009.  Norada Crypto purports to be an investment management company.  Norada Crypto was dissolved by the State of Wyoming in March 2025.  Upon information and belief, component investments of the Notes were held by Norada Crypto.

8.      Defendant, Norada Theatrical Productions LLC ("Norada Theatrical"), is a Wyoming limited liability company with a principal office located at 30251 Golden Lantern, Suite E361, Laguna Niguel, CA 92677.  Norada Theatrical also purports to be an investment management company.  On information and belief, Norada Theatrical has a sole Managing Member, Santarelli.  Norada Theatrical is in good status with the State of Wyoming.  Upon

information and belief, component investments of the Notes were held by Norada Theatrical.

9.      Defendant, Norada Real Estate Funding LLC ("Norada Real Estate Funding"), is a Wyoming limited liability company with a principal office located at 30251 Golden Lantern, Suite E361, Laguna Niguel, CA 92677.  Norada Real Estate Funding purports to be an investment management company concentrating on real estate investments.  On information and belief, Norada Real Estate Funding has a sole Managing Member, Santarelli.  Norada Real Estate Funding was dissolved by the State of Wyoming in October 2025.  Upon information and belief, component investments of the Notes were held by Norada Real Estate Funding.

10.      Defendant, Norada Capital Real Estate Fund I, LLC ("Norada Capital Real Estate"), is a limited liability company incorporated in Wyoming with a principal office located at 2232 Dell Range Boulevard, Suite 200, Cheyenne, WY 82009.  Norada Capital Real Estate purports to be an investment management company concentrating in real estate.  On information and belief, Norada Capital Real Estate has a sole Managing Member, Santarelli.  Norada Capital Real Estate was dissolved by the State of Wyoming in April 2025.  Upon information and belief, component investments of the Notes were held by Norada Capital Real Estate.

11.      Defendants, Norada Capital, Norada Equity, Norada Fund, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate, are sometimes collectively referred to herein as the "Norada Defendants."

12.      Defendant Santarelli is an individual who, on information and belief, resides in Laguna Niguel, California.  Santarelli is a licensed real estate broker in the State of California (License ID #01782514).  At all relevant times, Santarelli was a controlling person and the sole managing member, director, and/or officer

COMPLAINT                                                                                            4

of Norada Capital, Norada Equity, Norada Fund, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate. In September 2025, Santarelli was charged by federal prosecutors with one count of wire fraud based on the scheme alleged herein. Santarelli pleaded guilty to the charge in October 2025, and his sentencing is scheduled for August 2026.

13. On information and belief, Defendant, Michael Johnson ("Johnson"), resides in San Diego, California. Johnson is a licensed real estate agent (License ID #02016863) and is registered under Santarelli's real estate broker license. At all relevant times, Johnson served as the "Senior Investment Counselor" at Norada Capital and received transaction-based compensation derived from his placement and sale of the Notes.

14. Defendant, Ronald Fossum Jr. ("Fossum"), resides in Seattle, Washington. Fossum was formerly a licensed broker-dealer (CRD #3194203) until SEC civil and regulatory sanctions were entered against him on or about December 19, 2017, and June 17, 2018, respectively. Fossum was permanently barred by the SEC from association with any broker, dealer, or investment adviser and from participating in the issuance, purchase, offer, or sale of any security other than for his personal account. At all relevant times, Fossum served as the Chief Financial Officer ("CFO") at Norada Capital and, on information and belief, performed similar roles for the Norada Defendants.

15. Collectively, Defendants, Santarelli, Fossum and Johnson, are referred to herein as the "Individual Defendants."

**A.    Santarelli was the Alter Ego of the Norada Defendants**

16. The Norada Defendants operated as a single enterprise and shared common ownership, management, offices, personnel, marketing channels, and bank/payment infrastructure, and were used interchangeably as conduits for

investor funds represented to investors to be deployed into investments supporting the Notes.

17. Plaintiffs are informed and believe and thereon allege that at all times relevant to this Complaint, Santarelli acted as an agent, servant, controlling person, or representative of the Norada Defendants, so as to render the corporate form of Norada Capital as his own.

18. At all relevant times, Santarelli dominated and controlled the Norada Defendants such that their separate corporate personalities did not in reality exist.

19. Instead, investor proceeds were commingled among the entities, transferred without arms-length documentation or reasonably equivalent value, and used to fund operations and expenditures without regard to corporate separateness.

20. The Norada Defendants were inadequately capitalized relative to the obligations undertaken to the Plaintiffs, and the structure was used to conceal insolvency, hinder creditor recovery, and perpetuate the scheme described herein.

21. Recognizing the corporate separateness of the Norada Defendants would promote injustice because Defendants used the entity structure to raise investor funds, distribute misleading materials, and shield Santarelli from liability while he exercised dominion and control.

22. The Norada Defendants failed to observe corporate formalities, lacked independent boards or governance, shared common bank accounts and accounting personnel, commingled funds without documentation, and functioned as instrumentalities of Santarelli.

### III.  JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different states. This Court also has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 because Plaintiffs assert claims arising under Section 10(b) and Section

20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

24.    Alternatively, this Court has jurisdiction under 28 U.S.C. § 1331 because the action arises under the laws of the United States, and under 28 U.S.C. § 1367(a) for any related state law claims because those claims arise from the same nucleus of operative facts as the federal securities claims, including the solicitation, issuance, marketing, and administration of the promissory notes at issue and the subsequent suspension, conversion, and nonpayment of amounts owed to Plaintiffs.

25.    Defendants, Santarelli and Johnson, are subject to personal jurisdiction in this District because they are located in or reside in California and/or committed the wrongful acts alleged herein in California.

26.    This Court has personal jurisdiction over Defendant, Fossum, because, on information and belief, he purposefully directed and participated in a nationwide securities offering administered and controlled from California, served as Chief Financial Officer of Norada Capital in connection with the Notes offering, exercised substantial influence over financial reporting and investor payment administration that was routed through California-based operations, and knew or should have known that the effects of his conduct would be felt by investors in California and nationwide.  Fossum's actions constitute purposeful availment and purposeful direction toward this forum.

27.    This Court has personal jurisdiction over the Norada Defendants because they are, and have been at relevant times, authorized to conduct business in California, conducted continuous and systematic business operations within this District, directed the offer and sale of the Notes from this District, administered investor funds in this District, and actively assisted in the challenged scheme in this District.

COMPLAINT                                                                                           7

28.     To the extent not otherwise provided, jurisdiction of this Court over each Defendant may be invoked through California's long-arm statute.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 78aa because a substantial part of the events and omissions giving rise to the claims occurred in this District.  Santarelli resides in this District and the SEC's enforcement action against Santarelli was filed in this District.

## IV.   FACTUAL ALLEGATIONS

### A.   Background on Norada Capital

30.     Norada Capital, Norada Fund, Santarelli and Johnson are each unregistered as investment brokers, dealers, or investment advisers under both federal law and the laws of Oregon.  Norada Capital, Santarelli and Johnson are in the business of sponsoring, marketing, and managing unregistered securities offerings to the public in the form of the Notes.  According to Norada Capital, its role is to provide investors with promissory note investments that generate "predictable" and "monthly passive income" so investors "don't have to chase the unpredictable returns offered by the stock market."  *See* Exhibit 1 ("Predictable Income with Promissory Notes"), at p. 1.

31.     Instead, the Individual Defendants utilized the Notes and the other Norada Defendants under Santarelli's control to concoct a Ponzi scheme paying purported "returns" to investors using new investor money, while concealing insolvency, misusing proceeds, and diverting investor funds to affiliated entities and outside ventures—all the while coopting the Norada Defendants as instrumentalities to waste or misappropriate investor funds.

32.     Norada Capital served as the front company to which investors transferred their funds under the guise of a legitimate investment.  The other Norada Defendants were the supposed "investment vehicles" through which returns were to be provided.

COMPLAINT                                                                                                8

33.    On or about November 30, 2020, Norada Capital, through its Managing Member, Santarelli, filed a Form D with the United States Securities and Exchange Commission ("SEC"), pursuant to Rule 506(c) of Regulation D of the Securities Act of 1933.  Under Regulation D, companies are permitted to offer and sell securities without SEC registration provided that certain conditions are met, including the absence of any disqualifying "bad actors" and the issuer's compliance with disclosure and anti-fraud requirements.

34.    However, Norada Capital's "investor deck," which Plaintiffs received prior to their investments, named Fossum (CRD #3194203) as the company's CFO.  Fossum is a former investment fund manager who was found liable on or about June 17, 2018, of "misappropriating hundreds of thousands of dollars of investor funds he raised through unregistered securities offerings of three investment funds he owned and controlled." *Securities and Exchange Commission v. Ronald A. Fossum, Jr. and Alonzo R. Cahoon*, No. 2:17-cv-01894 (W.D. Wash., Filed Dec. 19, 2017).  As a result of the judgment entered against Fossum in that matter, the SEC indefinitely barred him from acting as a broker or investment advisor or otherwise associating with firms that sell securities or provide investment advice to the public and from participating in the issuance, purchase, offer, or sale of any security other than for his own personal account. *Id.* Fossum's prior wrongdoing and permanent bar by the SEC render him a "bad actor" per the applicable SEC regulations.

35.    Therefore, Norada Capital was prohibited from claiming a Regulation D exemption because the presence of a disqualified individual triggered the "bad actor" disqualification under Rule 506(c) of the 1933 Act.

36.    Disclosure of Fossum's status was material to any reasonable investor in the Notes and material to the legality of the claimed exemption.  Fossum's status as a "bad actor" was never disclosed to Plaintiffs or the SEC and a

COMPLAINT                                                                                                9

reasonable investor would have considered it important in making an investment decision.

37.     Santarelli signed and certified the accuracy of Norada Capital's Form D filing, falsely asserting that no exceptions or disqualifications applied.  Because Fossum is a "bad actor" pursuant to Rule 506(c) of Regulation D, Santarelli's attestation that any of the Norada Defendants were eligible to claim a Regulation D exemption from registration was materially false and misleading.  Thus, any claims that Norada Capital or others may make regarding reliance on private securities offering exemptions are void as a matter of law.

38.     Other material facts regarding individuals involved in the Norada Enterprise were never disclosed properly.  In 2007, Santarelli's former company, 360 Enterprises d/b/a Norada Real Estate, filed for bankruptcy in the U.S. Bankruptcy Court, Central District of California.  *See In re 360 Enterprises*, Petition Number 8:07-bk-12868-RK.  This fact was never disclosed to Plaintiffs in the placement of the Notes and continued holding of the Notes.

39.     In 2008, Santarelli filed for bankruptcy in the U.S. Bankruptcy Court for the Central District of California, and had his debts discharged.  *See In re Marco Santarelli,* Petition Number 8:08-bk-13931-RK. This fact was never disclosed to Plaintiffs.

40.     In June 2011, the Pennsylvania Securities Commission issued a Cease-and-Desist Order, finding Santarelli violated Pennsylvania state securities laws by offering unregistered securities to a non-accredited investor and failing to disclose his bankruptcy filing and debt discharge as well as 360 Enterprises d/b/a Norada Real Estate's bankruptcy filing.

41.     As a result of this conduct in Pennsylvania, on June 13, 2012, the California Department of Corporations also issued a Cease-and-Desist Order against Santarelli, Cash Flow Management, LLC, and Cash Flow Energy Fund, LLC, ordering they refrain from the further offer or sale of securities in California,

unless and until qualification was made under California law or unless exempt. This fact was never disclosed to Plaintiffs.

### B.     The Promissory Note Scam Begins

42.     Norada Capital utilized numerous false and misleading marketing materials and channels, including a publicly accessible website, to perpetuate its Ponzi scheme.  Norada Capital knew those material misrepresentations and omissions were false and misleading when made or failed to be made and knew that the Plaintiffs and others did not realize the risky and highly speculative nature of the investments doomed any reasonable prospects to ever get their money back.

43.     On July 17, 2021, Norada Capital distributed to Plaintiffs, and others, marketing materials offering "predictable income with promissory notes" and "monthly passive income with interest of 15% or more" (the "Notes").  *See* Exh. 1, at p. 1.  Norada Capital stated that investment objectives for the Notes were to provide "rates of return that are higher than banks, traditional low yield bonds, and higher than most stock dividends." *Id.*, at p. 1.  Norada Capital also offered the Notes as a way for investors to "use their self- directed traditional IRA or Roth IRA.  We can recommend several custodian companies that handle the paperwork and hold your IRA while the funds are invested with us." *Id.*, at p. 1.

44.     Santarelli, purportedly speaking on behalf of Norada Real Estate to falsely imply the safety of real estate investments to the Notes, also publicly promoted investments in the Notes on Norada Real Estate's YouTube channel.[1]

45.     Investors in the Notes, such as the Plaintiffs, were offered terms ranging from three to seven years, a 12% to 16.7% interest rate depending on the principal amount invested, and a possible 5% "bonus rate" if $200,000.00 or more was invested.  *See* Exh. 1, at pp. 1-2.  Norada Capital stated that it sought

---

[1] Norada Real Estate Investments, *How to Earn 15% Interest and Beat Inflation with Promissory Notes (Norada Capital Management)*, YOUTUBE (Jan. 20, 2023), https://www.youtube.com/watch?v=XZvLUd7qMPk.

"stable and high-income opportunities with capital preservation. A secondary objective is to take advantage of opportunities with good capital appreciation potential." Exh. 1, at p. 2.

46.     These representations were false when made or caused to be made by Defendants while associated with the Norada Enterprise. The purported portfolio companies did not generate the cash flow required to service the promised interest rates. Norada Capital lacked sufficient legitimate operating income to make the promised payments to investors in the Notes.

47.     Notably, Norada Capital stated that interested persons in the Notes "need to be an accredited investor as defined by the SEC under Rule 501." Exh. 1, at p. 5.

48.     One of Norada Capital's flyers also stated that its current holdings underlying the Notes fell into three categories and listed various company names as follows:

a)     E-Commerce Business

    i.     Pier 1

    ii.     Linens n Things

    iii.     Ralph & Russo

    iv.     Dressbarn

    v.     RadioShack

    vi.     Stein Mart

    vii.     Roland Mouret

    viii.     Modell's Sporting Goods

    ix.     Bodybuilding.com

    x.     The Franklin Mint

    xi.     Farmerscart

    xii.     MentorBox

      b)     Real Estate and Other Businesses

           i.     BRD Land & Investment

           ii.     Norada Theatrical Productions

           iii.     GeniusGroup

      c)     Crypto Assets

           i.     RadioShack SWAP

           ii.     USV Atlas

           iii.     Bitcoin

           iv.     Ethereum

           v.     Solana

Exh. 1, at p. 3.

49.     At all relevant times, Defendants failed to warn or disclose Santarelli's prior business failures, bankruptcy filings, debt discharge, prior findings that he violated state securities laws in his previous investment ventures, and other business irregularities to which they were privy. These failures by Norada Capital and Santarelli to disclose such information were intentional, as revealing Santarelli's past questionable conduct would have shattered his on-line persona as an investment savant worthy of entrustment of tens of millions of dollars for investment. In fact, the theatrical investments touted by Santarelli that were used to lure Plaintiffs, and other investors, to purchase Notes were nominal and meaningless in light of the overall Ponzi scheme then underway.

50.     Norada Capital also explained in its Frequently Asked Questions attached to its marketing materials distributed on July 17, 2021, that it "earns a profit from the investments and loans it originates to businesses and investment opportunities it underwrites." Exh. 1, at p. 4. Norada Capital further specified that an investor's principal "is automatically returned to [his/her] funding account upon the maturity of [his/her] Note. [Investor has] the option to reinvest your principal if additional investment opportunities are available at that time." *Id.*

51.     These statements were false when made and known to be false by both Santarelli and Fossum, given that Norada Capital in fact did not maintain segregated "accounts" such as a "funding account" for the return of capital.  This is because no such capital could ever be lawfully returned to investors in the Notes because the underlying companies were not generating profit and investors' money was commingled and utilized by Santarelli and Fossum to conduct Ponzi activities.

52.     Since the inception of the Notes, on information and belief, Santarelli, by and through the Norada Defendants, accumulated millions of dollars from dozens of investors through the numerous false and misleading statements in the marketing materials for the Notes, all supported by a "boiler room" like sales staff that could conveniently feign ignorance to the funds of investors being frittered away.  These funds accumulated by Santarelli funded, *inter alia*, his spending on consumer goods and other non-investment activities, which, upon information and belief, involved thousands of transactions per month on at least one credit card.  Santarelli's management of the underlying investments and corporate affairs of the companies providing returns for the Notes was not his main priority.

**C.     The Plaintiffs' Investments**

53.     In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital by Defendants Norada Capital and Santarelli, on September 18, 2021, the Rosses purchased a Note (the "First Note") from Norada Capital.  Plaintiffs' First Note contained the following terms:

- $100,000.00 principal amount;
- 15% Per Annum Interest; and
- 3-Year Maturity Date.

*See* Exhibit 2 ("Promissory Note" dated September 18, 2021), at p. 1.

COMPLAINT                                                                                                                                      14

54.    In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiffs by Defendants Norada Capital and Santarelli, on December 12, 2022, Plaintiffs purchased another Note (the "Second Note") from Norada Capital by investing an additional $100,000 with Norada Capital.  Plaintiffs' Second Note (which consolidated the prior principal with the additional $100,000) contained the following terms:

- $200,000.00 principal amount;
- 15% Per Annum Interest;
- 3-Year Maturity Date;
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

*See* Exhibit 3 ("Promissory Note" dated December 12, 2022), at p. 1.

55.    In justifiable reliance upon the aforementioned misrepresentations and misinformation provided on behalf of Norada Capital to Plaintiffs by Defendants Norada Capital and Santarelli, on August 29, 2023, Plaintiffs purchased another Note (the "Third Note") from Norada Capital investing an additional $50,000 with Norada Capital.  Plaintiffs' Third Note (which consolidated the prior principal with the additional $50,000) contained the following terms:

- $250,000.00 principal amount;
- 17% Per Annum Interest;
- 4-Year Maturity Date;
- "Bonus" payment equal to 5% of the principal amount remaining on the Note on or before the Maturity Date.

*See* Exhibit 4 ("Promissory Note" dated August 29, 2023), at p. 1.

COMPLAINT                                                                          15

### D.    Failures to Disclose

56.    From at least July 17, 2021, through at least August 29, 2023, Norada Capital and Santarelli continuously failed to disclose to current and prospective investors in the Notes, including Plaintiffs, that the Norada Defendants were components of a Ponzi scheme, that financial information regarding its component investments under common control by Santarelli was known by Defendants to be false or misleading, and that there was insufficient income and returns to pay the interest or "bonus payments" that were promised to holders of the Notes, and that there was no reasonable basis to believe that such income could or would be generated in the future to meet such obligations due to the misuse of funds by Santarelli.

57.    The Private Placement Memorandum ("PPM") of Norada Capital is no shield for Defendants' liability as Plaintiffs did not receive any copy of the PPM at any time prior to investing.  Additionally, the Notes that Plaintiffs executed did not reference *any* PPM for the Notes.  This meant that the disclosures as to risks and financial information were virtually all provided directly to investors by staff at Norada Capital under the control of Santarelli and Fossum, if at all.

58.    Norada Capital and Santarelli further failed to disclose to Plaintiffs the fact that (1) Santarelli previously filed for bankruptcy and had his debts discharged in 2008; (2) Santarelli was previously subject to a cease-and-desist order from the Pennsylvania Securities Commission in June 2011 for violating Pennsylvania state securities laws by offering unregistered securities to a non-accredited investor and failing to disclose his bankruptcy filing and debt discharge; and (3) Santarelli's previous company 360 Enterprises d/b/a Norada Real Estate also filed for bankruptcy.

59.    Further, Paragraph 6(a) of each of Plaintiffs' Notes provides that a default occurs when Norada Capital fails to make any payment required under the

Note and such period of non-payment continued for more than a period of time of 10 calendar days after notice from Plaintiffs. *See* Exh. 2, at p. 2; Exh. 3, at p. 2; Exh. 4, at p. 2. Paragraph 6 further states that:

> If a Default exists or is deemed to exist, all sums due under this Promissory Note, including without limitation the entire unpaid principal balance and all accrued and unpaid interest, will become immediately due and payable without further notice or demand by the Holder, and the Holder, at its option, may, to the extent allowed by applicable law and beginning as of the date of default, charge annual interest at the rate of 18%, compounded on the 1st of each calendar month. If a Default exists or is deemed to exist, in addition to the rights arising under the preceding sentence, the Holder also will have all other rights to which the Holder may be entitled, whether under applicable law, contract or otherwise.

Exh. 2, at pp. 2-3.

60.    Norada Capital stopped making the payments required under the Notes to Plaintiffs in June 2024.

61.    The misrepresentations and omissions made or caused by Defendants artificially inflated the perceived value and safety of the Notes. When the truth regarding Norada Capital's insolvency, lack of legitimate cash flow, and inability to continue payments was revealed through the suspension of distributions and forced conversion on June 20, 2024, the true value of the Notes was exposed as substantially less than represented.

**E.    The Promissory Notes Scam Crumbles**

62.    On June 13, 2024, Santarelli continued to seek investments in the Notes in a YouTube webinar to which investors were invited.[2] Norada touted an investment in the Notes as "well-diversified." *See id.* These statements made by Defendants were misleading because the investments were not diversified. They were all distressed and virtually worthless.

---

[2] Ask Marco Anything| Norada Webinar 6.11.24, Norada Capital Management, YOUTUBE, https://www.youtube.com/watch?v=nNSXcXQXucQ (last visited August 15, 2025).

COMPLAINT                                                                                    17

63.    In the June 13, 2024 YouTube webinar, Santarelli continued to discuss the purported continued success of the Mastermind Businesses—component investments of the Notes—which were in fact not successful to a degree sufficient to support their double-digit interest payments because the full amount of the capital that Santarelli promised to them was never provided.

64.    During the June 13, 2024 webinar, one listener asked what would happen if Norada Capital converted the note to equity and how would they gain interest back.  Santarelli responded that such a conversion "is actually to your benefit believe it or not because you actually can and probably will end up making more money by us exercising that option to convert your note into equity and then buying it back later with valuations going up on this . . . ."  Santarelli affirmatively stated, "[*n*]*one of our businesses are suffering*." (emphasis added).  "As the notes mature, we are just going to pay off the notes," he added.  Nothing could have been further from the truth, and Santarelli and Fossum knew as much when these and other statements to investors in the Notes were made with full knowledge of their falsity.

65.    For example, on his podcast "Passive Real Estate Investing," in June 2024, Santarelli continued to offer and advertise 12 to 15 percent interest paid monthly as distributions on the Notes.

66.    On June 20, 2024, however, Santarelli emailed Plaintiffs stating that Defendant Norada Capital would be suspending distribution payments on their Notes and converting their Notes into equity (membership interests) in Norada Capital.  *See* Exhibit 5 ("Notice of Note Conversion").  The e-mail included the following language:

> As with all businesses, Norada is subject to market factors that could impact its ability to make payments. Due to current market conditions and unforeseen financial challenges, we have decided to *temporarily* suspend distribution payments. This decision was not made lightly and comes after thorough deliberation and analysis of our current financial position.

Exh. 5, at p. 1.

67.     This statement was false and misleading when made, as market conditions had nothing to do with the inability of Norada Capital or Defendants to repay investors. The intent of this statement was, apparently, to lull investors into believing that the underlying investments had value when in fact they had little or none to speak of, and that somehow the Notes when converted into equity would be reconverted since the suspension of interest payments was "temporary."

68.     The e-mail also stated:

> This *requires us* to exercise our right to convert your Note and issue equity (aka membership interests) in Norada. (emphasis added) You will recall that your Note allows Norada to convert the outstanding balance owed into equity and that it can redeem that equity in the future by repayment of the Note principal in full. There is nothing required by you related to your Note being converted. It happens automatically upon notice being sent.

Exh. 5, at p. 1.

69.     This statement was false when made, as there was no requirement that Norada Capital convert its debt obligations to equity.

70.     The email continued:

> As such, this email will provide you notice that Norada has chosen to exercise its right under the Note §6 to issue equity to you in Norada. Your equity is valued at the unpaid face value of the Note plus any accrued but unpaid interest. We expect to be in a position to redeem your interests in short order, and we will keep you posted, as always, on any developments in this regard.

Exh. 5, at p. 1.

71.     This statement was false when made because the equity into which the debt obligations were converted was virtually worthless, thus rendering the valuation of equity wholly inaccurate and misleading.

72.     The email continued:

> We understand the importance of distributions to our investors and recognize the impact this decision may have on your financial planning. Please be assured that this suspension is *temporary*. We are committed to resuming regular distributions as soon as our financial situation stabilizes and improves.

COMPLAINT                                                                                                    19

> **Our primary goal** is to ensure the <u>long-term stability</u> and <u>sustainability</u> of our business. By temporarily halting distributions, we can preserve capital, manage our resources more effectively, and invest in key areas that will drive future growth and profitability.

Exh. 5, at p. 1.

73.     This statement was misleading when made as there was little or no capital to preserve, no further money to deploy, and that management of its business was essentially ending a Ponzi scheme.

74.     The deception from the Norada Defendants continued unabated. Investors were now invested as equity shareholders in Norada Capital.  Norada Capital promised investors "You now stand to benefit from any future gains in company and share value and any distributions paid to shareholders as determined by management."  *See* Exhibit 6 ("July 8, 2024 Conversion Update"), at p. 1. There were no such gains or distributions that would or could inure to the benefit of holders of the Notes, and thus this statement was false and misleading. Santarelli and the Norada Defendants knew such benefits would not be forthcoming because a significant amount of investors' funds were never invested at all but instead personally squandered by Santarelli.

75.     On or about July 8, 2024, Santarelli also confirmed that due to the purported conversion, there would no longer be "continued interest payments.  You are a shareholder and benefit from potential future gains in share value, cash distributions, and redemptions from liquidity distribution events."  *Id.*, at p. 1.

76.     On or about July 8, 2024, Santarelli also stated that the decision to suspend payments was a result of "thorough deliberation and analysis of market conditions, the cash distribution position of our investments, and our current financial position[.]"  *Id.*, at p. 2.  Santarelli further elaborated that "market conditions" meant "tight capital markets, slower-than-expected revenue growth with our portfolio businesses, and the overall cash position and distribution schedules of our portfolio businesses."  *Id.*, at p. 2.  Santarelli promised financial

COMPLAINT                                                                    20

reports would be provided in the coming weeks to determine company and share value. *See id.*, at p. 2.

77. On or about July 8, 2024, Santarelli elaborated the plan is to "redeem investor's shares as soon as it becomes financially feasible." *Id.*, at p. 2. Santarelli stated that "[r]edemption is the repurchase of your equity as determined by the company. It is not something the investor can choose to do at their option. It is also not based on the Promissory Note maturity date prior to the conversion to equity." *Id.*, at p. 2.

78. On or about July 8, 2024, as to the liquidity of the shares, Santarelli also stated "[s]hares are not liquid. They can be redeemed by the company at any time or sold privately to another investor with the approval of Norada Capital." *Id.*, at p. 2.

79. Santarelli sent Plaintiffs and other investors another e-mail update on July 29, 2024, in which he confirmed that Norada Capital "in its sole discretion" made the conversion of the Notes to equity. *See* Exhibit 7 ("July 29, 2024 Conversion Update"), at p. 1. Santarelli confirmed "Equity is not liquid or assignable" and "equity investors are not vested with voting or management authority." *Id.*, at pp. 2-3.

80. When asked if the company is going bankrupt, Santarelli responded that "No, it is not. After careful consideration and analysis, we implemented these changes to ensure our business's long-term stability and sustainability, benefitting all our investors." *Id.*, at p. 4.

81. Santarelli issued another e-mail update on August 12, 2024, specific to the e- commerce business assets of Norada Capital. *See* Exhibit 8 ("August 12, 2024, Conversion Update"). Santarelli communicated that the financial instruments of the e-commerce businesses were restricted and placed into an "almost entirely debt-free holding company" called "Omni." *Id.*, at p. 2. In this letter, Santarelli stated Norada Capital invested $12,250,000.00 into "various e-

COMPLAINT                                                                                              21

commerce-based investments" and that "Norada Capital owns 11.1193% of Omni's equity today." *Id.*, at p. 6.

82. The nonsense of this statement is inescapable. There has been no disclosure to anyone as to who manages "Omni," where Norada Capital sits in its capital stack, and why Norada Capital is even invested in it. Further, Santarelli knew or should have known by August 2024 that the Notes were placed in violation of the Regulation D exemption previously claimed, and thus any holding of unregistered, "restricted" financial instruments could not be held indirectly or beneficially by unaccredited investors.

83. To the extent funds were invested at all, Plaintiffs are informed and believe that the financial instruments invested in via the Ponzi scheme of the Notes were not registered with the SEC, Wyoming's securities authorities, or the securities authorities of *any* jurisdiction. Further, Santarelli's control positions within component companies created irreconcilable conflicts of interest. Norada Capital and thus its component companies under the control of Santarelli also failed to comply with the prohibitions of solicitation of investments from unaccredited investors, including public advertising and a publicly accessible website.

84. The Norada Defendants, Santarelli, and Fossum utilized instrumentalities of interstate commerce in connection with unlawful placements and sales of unregistered securities in the form of the Notes.

85. In connection with the foregoing, the Norada Defendants, Santarelli and Fossum, made or caused to make material misrepresentations to Plaintiffs and failed to disclose, or caused to fail to disclose, material facts upon which a reasonable investor would rely, including but not limited to disclosures regarding (a) the risk level of the Notes as unsuitable for any investor, (b) each Plaintiff's lack of suitability for such investments, (c) the control and dominion of Santarelli over the Norada Defendants, (d) the lack of internal controls among the Norada

Defendants, (e) the misuse of funds intended for the Notes by Santarelli, (f) the inability of Norada Capital to claim a safe harbor under Regulation D due to its own misconduct and its association with "bad actors," and (g) the accuracy of financial information regarding component companies underlying the Notes.

86.     Plaintiffs are informed and believe that Santarelli, Fossum, and the Norada Defendants affirmatively knew those material misrepresentations and omissions were false and misleading when they made them or failed to make them, and knew that Plaintiffs did not realize the risky and highly speculative nature of the investments doomed any reasonable prospects to ever get their money back.  Had any one of these Defendants disclosed the truth as to the financial condition of their Ponzi scheme or warned Plaintiffs as to the true state of the Norada Enterprise, Plaintiffs would not have purchased the Notes.

87.     By the end of November 2024, virtually all communications regarding the Notes and equity of Norada Capital had ceased.

## V.     ANY SAFE HARBOR PROVISIONS FOR FORWARD-LOOKING STATEMENTS ARE INAPPLICABLE

88.     Any statutory safe harbor for forward-looking statements under state and federal securities laws does not apply to Norada Capital or those speaking on its behalf with regard to the Notes.  First, the representations made by the individual and entity defendants with respect to the risks of the Notes were not forward-looking statements when they were made or offered to Plaintiffs but instead statements made in furtherance of an overall fraud.  To the extent that any such statements were forward-looking statements, other than meaningless "boilerplate," there were no meaningful "cautionary statements" or disclosures identifying important factors that could cause actual results from *each* of the component investments in the Norada Capital portfolio to differ materially from those in the forward-looking statements.  Further, the safe harbor does not protect material omissions, in light of Defendants' violations of Regulation D.

COMPLAINT                                                                                   23

# FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND EXCHANGE ACT RULE 10b-5
### (Plaintiffs Against the Norada Defendants, Santarelli, and Fossum)

89.    Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein.  This cause of action is pled in the alternative to the extent permitted by law.

90.    At all relevant times, the Norada Defendants, Santarelli, and Fossum: (a) made or caused to make material misrepresentations regarding the risk of the Notes and/or failed to disclose the risk of the investments supporting the Notes, and thus the Notes; (b) knew that the underlying investments of the Notes, and thus the Notes, were risky and highly speculative when the statements and/or omissions were made upon which a reasonable investor would rely; (c) failed to disclose conflicts of interest in ownership and control by Santarelli and Fossum among the Norada Defendants; (d) engaged in the aforementioned acts in connection with the placement and sale of unregistered securities; (e) knew that each of the Plaintiffs reasonably would rely or relied on these material misrepresentations and/or omissions in connection with their decisions to purchase or hold financial interests in the Notes; (f) knew that Plaintiffs' reliance led to the loss of substantial sums of their respective investments; and (g) knew that Defendants' misrepresentations and omissions were made with requisite scienter and intended to and did induce Plaintiffs' reliance with the intent to defraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

91.    At all relevant times, the Norada Defendants, Santarelli, and Fossum intentionally failed to disclose material facts to Plaintiffs and acted with requisite scienter with such disclosure failures, including but not limited to (a) Fossum's status as a "bad actor," (b) that Santarelli was a failure as an investment professional and in fact previously filed for bankruptcy; (c) that Santarelli was previously ordered to cease and desist from offering nonexempt, unregistered

COMPLAINT                                                                                    24

offerings of securities due to illegally soliciting an unaccredited investor and failing to disclose his bankruptcy; and (d) Santarelli's company 360 Enterprises d/b/a Norada Real Estate previously filed for bankruptcy. Defendants also made material misrepresentations and/or omissions regarding how much revenue Norada Capital's underlying investments were generating because stating otherwise would have revealed that the Notes were unsuitable for anyone. Also undisclosed was the insufficient capitalization of those component companies of the Notes and thus the Notes to generate any return, along with the lack of any reasonable factual bases for Santarelli's "track record," the outsized returns, and the "bonus" promised to investors in the Notes.

92. Further, each of the Norada Defendants knew that Norada Capital was acting as an unregistered broker-dealer and investment adviser when federal securities laws required its registration as such. But at every turn and in every communication with Plaintiffs, the Norada Defendants intentionally failed to disclose that Norada Capital's operations were being conducted in violation of state and federal securities laws given that Norada Capital should have been registered as a broker-dealer or investment adviser to conduct its business, but it was not. They acted with scienter as to these failures because had they actually undertaken the disclosures they were supposed to make, their Ponzi scheme could never have garnered funds from unsuspecting investors.

93. Through these and other misstatements and omissions, the Norada Defendants, Santarelli, and Fossum, directly and indirectly, through the instrumentalities of interstate commerce, engaged in a continuous course of causing and making misrepresentations and omissions regarding the Notes for the purpose of deceiving and misleading investors. Included in these misrepresentations were misstatements as to reliance on Regulation D as an exemption from registration when that exemption could not be invoked.

94.     The Norada Defendants, Santarelli and Fossum each also failed to disclose that the Notes and the investments supposedly supporting them were merely the pretext for the operation of a Ponzi scheme to fund compulsive spending by Santarelli.  Each of the Norada Defendants, Santarelli, and Fossum knew of Santarelli's misuse of investors' funds yet stood in silence and failed to disclose such conduct to Plaintiffs or warn them.

95.     At the time of these misrepresentations and key omissions, Plaintiffs were ignorant of the riskiness and speculative nature—if not the inherent worthlessness—of the investments that the Norada Defendants, Santarelli, and Fossum had induced them to purchase through those misrepresentations and omissions.  Had Plaintiffs known about the extreme risks involved, Santarelli's previous cease and desist orders and prior bankruptcy filings, Fossum's status as a "bad actor," and/or that Santarelli was running a Ponzi scheme to fund excessive spending, Plaintiffs would have never invested in the unregistered securities.

96.     Plaintiffs further aver that the conduct of each of the Norada Defendants was so blatantly reckless as to misstatements and omissions to investors in the Notes that this Court may infer they each acted with scienter as a matter of law.

97.     Based on the foregoing, the Norada Defendants, Santarelli, and Fossum each violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

98.     As a direct and proximate result of the wrongful conduct, Plaintiffs suffered damages of at least $250,000, the exact amount of which will be proven at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**
**(Plaintiffs Against Defendants Santarelli and Fossum)**

99.    Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein.  This cause of action is pled in the alternative to the extent permitted by law.

100.   As alleged herein, Santarelli acted as a controlling person of Norada Defendants within the meaning of Section 20(a) of the Exchange Act.  At all relevant times, Santarelli was the Managing Member of Defendant Norada Capital.  By virtue of his position with Defendant Norada Capital, this individual had the power to influence and control the decision making of Defendant Norada Capital, including Defendant Norada Capital's dealings with Plaintiffs and the equity conversion done in violation of governing corporate documents.  In particular, Santarelli had direct involvement in the operations of Defendant Norada Capital and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

101.   Likewise, Defendant Fossum acted as a controlling person of Norada Defendants within the meaning of Section 20(a) of the Exchange Act.  At all relevant times, Defendant Fossum was the CFO of Defendant Norada Capital. By virtue of his position with Defendant Norada Capital, this individual had the power to influence and control the financial decision making of Defendant Norada Capital, including Defendant Norada Capital's dealings with Plaintiffs and the equity conversion done in violation of governing corporate documents.  In particular, Defendant Fossum had direct involvement in the operations of Defendant Norada Capital and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

102. Also, as set forth above, Defendants Santarelli and Fossum, while acting on behalf of Defendant Norada Capital, committed primary violations of Section 10(b) and Rule 10b-5 by the acts and omissions alleged herein. By virtue of their control positions of entities intimately entwined in the Norada Ponzi scheme, Defendants Santarelli and Fossum are each personally liable for Plaintiffs' losses in the Notes pursuant to Section 20(a) of the Exchange Act.

**THIRD CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Plaintiffs Against the Norada Defendants)**

103. Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

104. The Norada Defendants made representations to Plaintiffs regarding material facts, including the risks and suitability of certain investments.

105. The Notes constitute "securities" under applicable securities law.

106. Plaintiffs are informed and believe that the representations made regarding the risks and suitability of such investments for Plaintiffs were false and/or that the Norada Defendants omitted material information regarding Santarelli's qualifications for managing millions of dollars in investments, Santarelli's control status of Mastermind Businesses, Santarelli's misuse of investor funds, as well as Fossum's capacity to act as a Chief Financial Officer when federal securities laws prohibited him from doing so given his "bad actor" status.

107. Plaintiffs are informed and believe that the representations were made by the Norada Defendants regarding the risks and suitability of the Notes without reasonable grounds for believing them to be true, and more likely than not, made to further a Ponzi scheme.

108. At the time Plaintiffs invested in the Notes, they were unaware of the falsity of the misrepresentations and/or omissions and acted with justifiable

reliance on the truth of each and every one of those representations made by the Norada Defendants.

109.   In engaging in the alleged misconduct, the Norada Defendants made misrepresentations and statements of material facts and omitted to state material facts regarding the risk and suitability of the investments, all of which were necessary to inform Plaintiffs of all material facts required to make informed decisions regarding the purchase of the unregistered securities.

110.   As a direct and proximate result of the misrepresentations and omissions alleged, Plaintiffs have suffered money damages in excess of $250,000, the exact amount of which will be proven at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiffs Against Defendants Santarelli, Fossum, and Norada Capital Management LLC)**

111.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is expressly pled in the alternative.

112.   Santarelli and Fossum, as managing members, officers, directors, or agents of Defendant Norada Capital and entities sharing common control with it, each had a fiduciary duty to act in the utmost good faith for the benefit of Plaintiffs.  Specifically, Santarelli and Norada Capital were required to adequately advise Plaintiffs regarding the risks of their investments in the Notes.

113.   Norada Capital, Santarelli, and Fossum each breached their fiduciary duties owed to Plaintiffs including, but not limited to their (a) failure to adequately advise Plaintiffs regarding the financial risks inherent in such speculative investments; (b) failure to heed Plaintiffs' concerns and directions when Plaintiffs expressed concerns about the status of their Notes and the underlying investments in the Norada Defendants; (c) cause to obtain appropriate subscription information from Plaintiffs given the risk of an investment in the Notes; (d) failure to protect

Plaintiffs' financial interests and (e) in the case of Fossum, to decline acting in any role for Norada Capital whatsoever given his status as a "Bad Actor." The actions of Norada Capital, Santarelli, and Fossum were reckless, risky, and unwarranted, especially when considering Plaintiffs' investment objectives and risk tolerances. The management of Plaintiffs' funds in the component companies of the Notes, to the extent those funds were even invested in them, fell below any reasonable standard of care in the investment management industry and caused significant financial losses to Plaintiffs.

114.   As a direct and proximate result of the individual and entity defendants' breaches of fiduciary duties, Plaintiffs have suffered money damages in excess of $250,000, the exact amount of which will be proven at trial.

**FIFTH CAUSE OF ACTION**
**FRAUD**
**(Plaintiffs Against the Norada Defendants)**

115.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

116.   In offering and selling the securities referred to herein, the Norada Defendants made untrue statements and/or misrepresentations of material facts to some or all of the prospective investors, including Plaintiffs herein. The misrepresentations of material facts include, but are not limited to, those described in the above paragraphs.

117.   In offering and selling the securities referred to herein, the Norada Defendants also failed to state material facts to some or all of the prospective investors, including Plaintiffs herein. The omissions of material facts include, but are not limited to, those described in the above paragraphs.

118.   The Norada Defendants had a duty to disclose these material facts as a result of their fiduciary roles and common control.

COMPLAINT                                                                                           30

119.   The Norada Defendants had a further duty to disclose these material facts since they undertook steps to make other affirmative representations about these matters and were thus bound to make full and fair disclosure of all material facts regarding their respective business and financial affairs.

120.   The Norada Defendants misrepresented, suppressed, and concealed material facts with the intent to induce reliance and to defraud Plaintiffs.

121.   At all relevant times, Plaintiffs were unaware of the material facts that were misrepresented, suppressed, and concealed by the Norada Defendants.  If Plaintiffs had been aware of such suppressions, misrepresentations or concealments, they would not have invested in the Notes or would have taken further steps prior to this lawsuit to protect their interests.

122.   As a direct and proximate result of the intentional and fraudulent misrepresentations, suppressions, and concealments of material facts by the Norada Defendants, Plaintiffs have suffered, and continue to suffer, money damages in excess of $250,000, the exact amount of which will be proven at trial.

123.   The conduct of each of the Norada Defendants as described herein was despicable, willful, fraudulent, oppressive, and malicious so as to justify an award of exemplary or punitive damages to deter further misconduct.

**SIXTH CAUSE OF ACTION**
**FRAUDULENT TRANSFERS OF ASSETS IN VIOLATION OF THE**
**UNIFORM VOIDABLE TRANSACTIONS ACT,**
**O.R.S. § 95.230(1)(a)**
**(Plaintiffs Against Defendants Santarelli, Johnson, All Norada Defendants)**

124.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is pled in the alternative.

125.   Plaintiffs are informed and believe that Santarelli, acting on behalf of Defendant Norada Capital, caused large amounts of corporate funds and/or other corporate assets gathered from investors and intended to benefit holders of Notes to be transferred from Defendant Norada Capital to and among each of Norada

Equity, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate.

126.   Plaintiffs are also informed and have reason to believe that funds transferred to these entities were ultimately transferred to Santarelli himself, wherein they were frittered away on excessive personal spending.

127.   Plaintiffs are "creditors" within the meaning of O.R.S. § 95.200(4).

128.   At all relevant times, Defendants were indebted to Plaintiffs as creditors by virtue of the Notes.

129.   Plaintiffs are informed and believe and thereon allege that the transfer(s) were made with an actual intent to hinder, delay, or defraud Plaintiffs, within the meaning of O.R.S. § 95.230(1)(a), in the collection of their damages and/or return of funds to which Plaintiffs were and are legally entitled.

130.   Plaintiffs are informed and believe and thereon allege that, at the time the alleged transfers were made, Santarelli intended in the future to engage in this conduct in breach of relevant agreement(s) with Plaintiffs, as described more fully above, and for which Santarelli and Norada Capital intended to render themselves judgment-proof.

131.   Plaintiffs are informed and have reason to believe that Johnson, as "Senior Investment Counsel" for Norada Capital who was also present during investor pitches and meetings at the offices of Norada Capital, had reasonable bases to know or comprehend that Norada Capital and its principals were operating a "boiler room," received transaction-based compensation in connection with the placement of Notes, had reason to know that Santarelli was running a Ponzi scheme and received commissions which were in fact derived from Ponzi proceeds, or at the very least derived through repeated violations of state and federal securities laws.

132.   Plaintiffs are informed and believe and thereon allege that Defendant Norada Capital received no money or other consideration in exchange for the

aforementioned transfers and at the time of the transfers of funds and other assets, Defendant Norada Capital to Norada Equity, Inc., Norada Capital Ecommerce Fund I, Norada Capital Crypto Fund I, Norada Theatrical Productions, Norada Real Estate Funding, and Norada Capital Real Estate Fund I did not provide reasonably equivalent value in exchange for the transferred assets.

133.   Plaintiffs are informed and believe and thereon allege that Defendant Norada Capital to Norada Equity, Norada Ecommerce, Norada Crypto, Norada Theatrical, Norada Real Estate Funding, and Norada Capital Real Estate Fund received assets, including but not limited to those described above, with knowledge of an intention to: (1) hinder, delay, or defraud the collection or payment of Plaintiffs' aforementioned damages; and (2) further breach relevant agreement(s) with Plaintiffs, as described more fully above.

134.   Plaintiffs are informed and have reason to believe that Johnson received assets from investors in the Notes, either directly or indirectly, knowing such funds were procured through fraud by Santarelli and others affiliated with Norada Capital.  Thus, each of the aforementioned defendants ultimately received such funds with knowledge of an intention to: (1) hinder, delay, or defraud the collection or payment of Plaintiffs' aforementioned damages; and (2) further breach relevant agreement(s) with Plaintiffs, as described more fully herein.

135.   Transfers made in furtherance of a Ponzi scheme are presumptively made with actual intent to defraud creditors.

136.   At the time of the transfers, the Defendants were insolvent or were rendered insolvent as a result of such transfers.

137.   Plaintiffs are informed and believe and thereon allege that Santarelli and the Norada Defendants were aware or had reason to be aware of the fraudulent nature of each and every transfer(s).  As a result of the fraudulent asset transfers alleged herein and other acts of mismanagement by Santarelli, Defendant Norada Capital has been rendered an empty shell, without any assets, funds, or business

COMPLAINT                                                                                          33

operations.  All of the fraudulent asset transfers alleged herein are voidable under the Uniform Voidable Transactions Act, O.R.S. §§ 95.200, *et seq*. and the common law of the State of Oregon.  All of the fraudulently transferred assets and funds must be equitably traced and returned to Defendant Norada Capital for the benefit of Plaintiffs.  Pursuant to O.R.S. § 95.260, Plaintiffs seek avoidance of the transfers, attachment of transferred assets, injunctive relief, imposition of a constructive trust, and recovery of the value of the transferred assets.

### SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUDULENT TRANSFER IN VIOLATION OF THE UNIFORM VOIDABLE TRANSACTIONS ACT, O.R.S. § 95.230(1)(b)
### (Against All Defendants)

138.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is pled in the alternative.

139.   Defendants made transfers of investor funds and other property to Santarelli, Fossum, Johnson, Norada Fund, affiliated entities, and third-party ventures.

140.   The transfers were made without receiving reasonably equivalent value in exchange.

141.   At the time of the transfers, Defendants: (a) Were engaged in business for which their remaining assets were unreasonably small in relation to the business; or (b) Intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

142.   The Norada Enterprise operated at sustained cash-flow deficits and relied upon new investor funds to pay earlier investors.

143.   The underlying portfolio companies did not generate sufficient legitimate revenue to satisfy the obligations owed to Plaintiffs.

COMPLAINT                                                                                                34

144. Accordingly, the transfers are voidable under O.R.S. § 95.230(1)(b).

145. Plaintiffs have suffered damages equal to the unpaid principal and interest due under the Notes.

146. Plaintiffs seek all remedies available under O.R.S. § 95.260.

**EIGHTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Plaintiffs Against Defendant Norada Capital)**

147. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is expressly pled in the alternative.

148. Plaintiffs and Norada Capital entered into the Notes. Under the terms of the Notes, Norada Capital was to pay Plaintiffs monthly interest in exchange for use of their funds until the Notes' maturity dates, subject to other conditions enumerated in the Notes and, when provided, PPMs for the Notes.

149. Plaintiffs performed under the terms of the Notes by furnishing the funds.

150. Norada Capital breached the promissory notes by automatically converting outstanding balance into equity.

151. Plaintiffs sustained damages as a result of Norada Capital's failure to perform as provided under the respective Notes.

**NINTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Plaintiffs Against Defendant Norada Capital Management LLC)**

152. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

153. Plaintiffs and Norada Capital are parties to the Agreement that required Plaintiffs to furnish funds and for Norada Capital to return Plaintiffs' funds in addition to specified interest and bonus payments.

COMPLAINT                                                                 35

154. Plaintiffs have performed all conditions, covenants, and promises required to be performed on their part. Plaintiffs acted in good faith and timely sent their payments to Defendant Norada Capital.

155. Norada Capital violated its duty to act in good faith by directing Plaintiffs' investments into non-revenue generating enterprises, which was inconsistent with the parties' common purpose and justified expectations based on the Notes.

156. As a direct and proximate result of Norada Capital's wrongful acts alleged herein, Plaintiffs have and continue to suffer damages.

**TENTH CAUSE OF ACTION**
**ACCOUNTING**
**(Plaintiffs Against Norada Capital Management LLC)**

157. Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein. To the extent required, this cause of action is pled in the alternative.

158. Plaintiffs and Norada Capital had a fiduciary relationship based upon execution of the Notes.

159. Norada Capital breached its fiduciary duties to Plaintiffs based upon the fraudulent misrepresentations and omissions that resulted in Plaintiffs' investments.

160. Norada Capital's breaches of fiduciary duties concerned the Notes, property in which Plaintiffs have an interest.

161. Plaintiffs demand an accounting that confirms whether any of the money due and owing to them remains in Norada Capital's custody and/or control; identifies the recipients of any of the funds disbursed from Norada Capital; and provides all evidence concerning the disbursements and the disbursed amounts.

162. To date, Norada Capital has not provided this information.

163. Plaintiffs have no adequate remedy at law.

COMPLAINT                                                                 36

164.   Accordingly, Plaintiffs now demand that Norada Capital account for all of their actions relating to the Note amounts and provide Plaintiffs with all of the records in their possession relating to same.

**ELEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiffs Against Defendants Norada Capital Management LLC and Santarelli)**

165.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is pled in the alternative.

166.   Plaintiffs conferred a benefit to Defendants via investment through the Notes.

167.   Defendants voluntarily accepted and retained the benefits conferred.

168.   The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the value thereof to Plaintiffs.

**TWELFTH CAUSE OF ACTION**
**VIOLATIONS OF OREGON SECURITIES LAW,**
**O.R.S. § 59.115(1) and § 59.135(1)-(3)**
**(Plaintiffs Against All Defendants)**

169.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is pled in the alternative.

170.   At all relevant times, Defendants offered, marketed, and sold promissory notes to residents of the State of Oregon.

171.   The Notes at issue constitute "securities" within the meaning of O.R.S. § 59.015(19)(a).

172.   At all relevant times, the securities offered and sold to Oregon residents were not registered as required under O.R.S. § 59.055, and no exemption from registration applied.

COMPLAINT                                                                37

173.     Defendants are "persons" within the meaning of O.R.S. § 59.015(14) and are liable for violations of O.R.S. § 59.115(1)(a) and § 59.115(1)(b).

174.     The offer and sale of unregistered securities in violation of O.R.S. § 59.115(1) gives rise to civil liability under O.R.S. § 59.115(2).

175.     Pursuant to O.R.S. § 59.115(2), a purchaser of a security sold in violation of O.R.S. § 59.115(1) may recover: (a) the consideration paid for the security; (b) interest at nine percent (9%) per annum or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; and (c) reasonable attorneys' fees, upon tender of the security, or damages if the purchaser no longer owns the security.

176.     In addition, Defendants employed a scheme to defraud and made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, in connection with the offer and sale of securities, and engaged in an act, practice, or course of business which would operate as a fraud or deceit upon any person, in violation of O.R.S. § 59.135(1)-(3).

177.     Violations of O.R.S. § 59.135(1)-(3) also give rise to civil liability under O.R.S. § 59.115(2).

178.     While Plaintiffs have not waived protections under the securities laws of their home state and Defendants cannot waive compliance with such laws, Plaintiffs assert these same claims under parallel provisions of the laws of the State of Wyoming, which is the choice-of-law designated in the Notes to govern certain contractual matters, to the extent it controls, if at all.

179.     As a direct and proximate result of the Defendants' violations of the Oregon Securities Law, Plaintiffs have suffered damages of at least $250,000 and are entitled to rescission or damages, together with statutory interest and reasonable attorneys' fees pursuant to § 59.115(2).

COMPLAINT                                                                          38

**THIRTEENTH CAUSE OF ACTION**
**CONTROL PERSON AND PARTICIPATION LIABILITY UNDER**
**OREGON SECURITIES LAW, O.R.S. § 59.137(2)**
**(Plaintiffs Against All Defendants)**

180.   Plaintiffs incorporate herein by reference all preceding paragraphs of the Complaint as if set forth fully herein.  To the extent required, this cause of action is pled in the alternative.

181.   Under O.R.S. § 59.137: Every person who directly or indirectly controls a person liable under O.R.S. § 59.135(1), (2), or (3), every partner, officer, director, or person who occupies a similar status or performs a similar function of such person, and every person who materially aids in the violation, is jointly and severally liable with and to the same extent as the person, unless such person sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is based.

182.   Norada Capital and Defendants are liable to Plaintiffs under O.R.S. § 59.135(1)-(3) and § 59.137(1) for material misrepresentations, omissions, and fraudulent conduct in connection with the offer and sale of securities described herein.

183.   Defendants directly or indirectly controlled Norada Capital and exercised the power to direct or influence its management, policies, and securities offerings within the meaning of O.R.S. § 59.137(2).

184.   Defendants also materially aided in, participated in, and induced the unlawful sales at issue by, among other things, preparing or approving offering materials, directing investor communications, supervising fundraising efforts, controlling bank accounts, structuring inter-company transfers, and directing the use and transfer of investor funds.

COMPLAINT                                                                                        39

185. Defendants did not sustain, and cannot sustain, the statutory burden of proving that they did not know, and in the exercise of reasonable care could not have known, of the material misstatements, omissions, misuse of investor funds, and fraudulent scheme described above.

186. Defendants had actual knowledge of, or were reckless in failing to know of, the fraudulent scheme, commingling of investor funds, Ponzi-like payments, and material misrepresentations made to the Plaintiffs.

187. While Plaintiffs have not waived protections under the securities laws of their home state and Defendants cannot waive compliance with such laws, Plaintiffs assert these same claims under parallel provisions of the laws of the State of Wyoming, which is the choice-of-law designated in the Notes to govern certain contractual matters, to the extent it controls, if at all.

188. Accordingly, pursuant to O.R.S. § 59.137(2), the Defendants are jointly and severally liable with the primary violators to the Plaintiffs for rescission or damages, together with nine percent (9%) statutory interest, costs, and reasonable attorneys' fees as provided by Oregon law.

## JURY TRIAL REQUESTED

Plaintiffs request a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

1. An accounting of Defendants' funds;

2. Compensatory damages and/or other monetary relief in excess of $250,000 as provided under applicable state and federal laws, the exact amount of which will be proven at trial;

3. For exemplary or punitive damages, in an amount according to proof at trial;

4. For reasonable attorneys' fees and costs;

5. For pre- and post-judgment interest; and

COMPLAINT                                                                     40

6.    All other relief deemed just, proper, and equitable by the Court.

Dated: June 18, 2026

**MILLER SHAH LLP**

/s/ *James C. Shah*
James C. Shah (SBN 260435)
jcshah@millershah.com
8730 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Nathan C. Zipperian
(*pro hac vice* forthcoming)
Miller Shah LLP
nczipperian@millershah.com
2103 N. Commerce Pkwy.
Fort Lauderdale, FL 33326
Telephone: (866) 540-5505

*Attorneys for Plaintiffs*